UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| MARY LEA BYRD (SULLIVAN), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-00123 |
| | ) | REEVES/POPLIN |
| NATIONAL HEALTH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Mary Lea Byrd brings this action against her former employer alleging retaliatory discharge under the False Claims Act (FCA), the Tennessee Public Protection Act, and Tennessee common law. Byrd also asserts a claim for violation of the Family and Medical Leave Act (FMLA). National Health Corporation moves to dismiss Byrd's Amended Complaint for failure to state a claim. Because the allegations of the Amended Complaint relate back to the original Complaint for Byrd's claims of retaliation under the FCA and Tennessee state law, National Health's motion is denied as to those claims; however, Byrd's claim for retaliation under the FMLA is time-barred, and National Health's motion is granted as to the FMLA retaliation claim.

### I. Background

Byrd originally filed a Complaint under the FCA on September 21, 2012. The Complaint, filed under seal, sought to recover damages and civil penalties on behalf of the

United States for defendant's fraudulent practices in the operation of its skilled nursing facilities. Byrd alleged National Healthcare Corporation (NHC) committed numerous violations of the FCA by overcharging Medicare for the provision of skilled nursing services. Byrd's Complaint also alleged that NHC terminated her in violation of the FCA's anti-retaliation provision and asserted similar retaliatory discharge claims against NHC under Tennessee state law. The case remained under seal for over five years until the United States declined to intervene. The court then unsealed the *qui tam* action and granted Byrd leave to file an amended complaint to pursue her retaliatory discharge claims. The Amended Complaint named National Health Corporation, rather than NHC, as the operator of the nursing facility that employed her.

NHC operates licensed skilled nursing facilities and assisted living facilities in Knoxville, Tennessee and participates and bills the Federal government through the Medicare program. Byrd was initially hired by NHC on June 1, 1998, as the Director of Nursing at the facility in Farragut, Tennessee. The facility is owned and operated through various subsidiaries by NHC. In 2011, Byrd began objecting to NHC's practices, including requiring patients to being in medication from home, upcoding, billing for services not rendered, keeping patients on service when they no longer qualified for skilled nursing care, and falsification of reports, all to maximize payments from Medicare. Byrd alleges that after she objected to these practices, the Administrator, Karla Lane, began creating a hostile work environment and began placing increased pressure on Byrd to force her to quit. Due to the stress and pressure that occurred after her complaints, Byrd went on FMLA leave on December 5, 2011 through January 15, 2012.

After Byrd returned from FMLA leave on January 15, she was called into a meeting and given two options – either go on administrative leave or take a severance package and separate from employment. Byrd reluctantly chose to take leave instead of termination, which began on January 23, 2012. Byrd then submitted a written grievance on January 24, stating that her forced leave was in retaliation for her objections to practices of NHC that she believed to be illegal.

Shortly after filing the grievance, Byrd was permitted to return to work and Regional Vice President Ray Blevins apologized for "overacting" in the prior meeting by placing her on forced leave. NHC's Corporate Compliance Office also contacted Byrd to inform her that they were investigating her claims of fraudulent activity. A week later, Byrd further repeated and explained the extent of the fraud and illegal activity to Corporate Compliance. Byrd alleges that despite providing this information, NHC did not take corrective action and reported that an internal audit revealed only a 5% error rate. Corporate Compliance later confirmed that error rate was, in fact, false and the real error rate was around 20%.

On March 26, 2012, Byrd again complained to Corporate Compliance and the company's HR director about illegal activity and the retaliatory treatment she had experienced. As evidence of continuing retaliation, Byrd alleges that she attempted to get her mother and sister admitted to long-term care beds at an NHC facility, but after a month passed, NHC's employees would not respond to her inquiries. Byrd contacted Cheryl Lyons, Admission Coordinator, who reported to her that "Blevins called her yesterday and informed me that we were not to admit your family" and that "it was a regional decision."

3

Byrd complained that her family had been "shunned in retaliation for her complaint of illegal activity." In all, she complained of hostile treatment on at least five separate occasions.

Citing mounting stress at work, Byrd again took FMLA leave on July 12, 2012. When she returned, she was given a "final warning" by NHC for "outdated narcotics and failure to maintain adequate staffing levels." Byrd states she had never received any prior warning on these issues, nor had she ever received an initial warning. Despite her numerous reports of illegal activity, no corrective action was taken by NHC. Byrd did not want to appear complicit in such activity because it could jeopardize her nursing license. Byrd felt she had no choice but to resign, and she gave thirty days' notice on September 7, 2012.

## II. Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the material facts in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that plaintiff's claim for relief is valid. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 556 (2007)). In determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and determine whether the complaint contains enough facts to "state a claim to relief that is plausible on its face." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Additionally, Rule 8(a)(2) requires only a "short and plain

4

statement of the claim showing that the pleader is entitled to relief." *Bridge,* 681 F.3d at 358.

When evaluating a motion to dismiss, the court's primary focus is on the complaint. The court may, however, without converting the motion into one for summary judgment, consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as any other matters that are otherwise appropriate for the taking of judicial notice. *Amini v. Oberline College*, 259 F.3d 493, 502 (6th Cir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008).

National Health alleges Byrd's claims are barred by the applicable statutes of limitations because the claims do not relate back to the original Complaint. National Health also alleges that Byrd has not pled facts to support her retaliation claims.

### III. Analysis

**A.  Relation Back under Rule 15(c)(1)(C)**

**1.  FCA Retaliation**

A retaliation claim under the False Claims Act (FCA) has a three-year statute of limitations that begins to run at "the date when the retaliation occurred." 31 U.S.C. § 3730(h)(3). Facially, it would appear that Byrd's claim is time-barred, as she left NHC on September 7, 2012, alleging constructive discharge. Byrd asserts that her claim in the Amended Complaint should "relate back" to her original Complaint filed on September 21, 2012. The court agrees.

5

An amendment to a pleading relates back to the original pleading when

> the amendment changes the party or the naming of the party against whom a claim is asserted . . . and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C). The timing of service under Rule 15(c) is governed by Rule 4(m) which states that an added defendant must be served within ninety days of filing the complaint unless the plaintiff shows good cause. Fed.R.Civ.P. 4(m); *see also Jackson v. Herrington,* 393 Fed. Appx. 348, 353-54 (6th Cir. 2010) (noting that Rule 4(m)'s "good cause" exception is extended into Rule 15(c)). The court finds that Byrd has shown good cause. Under the FCA, a complaint is filed under seal, and cannot be served on the defendant without a court order. 31 U.S.C. § 3730(b)(2). If a complaint remained under seal until the ninety-day window for service had passed, relation back could be rendered impossible through no fault of the plaintiff. The Supreme Court has indicated that district courts have discretion to allow a suit to continue even if no good cause is shown. *See Henderson v. United States*, 517 U.S. 654, 662 (1966).

National Health argues it was not on constructive notice when the original lawsuit was filed against NHC. National Health is correct in stating that sharing a business address, registered agent, and counsel are not wholly dispositive to establishing such notice. The Sixth Circuit takes the position, however, that notice can be established when there is a "sufficient identity of interest" between the original plaintiff and the new plaintiff. *Asher v. Unarco Material Handling, Inc.,* 596F.3d 313, 319 (6th Cir. 2010). It can hardly be

6

concluded that National Health remained completely in the dark about the prior FCA action until being served in the instant case. The magnitude of the relationship between National Health and NHC is difficult to deny. Defendant does not dispute that National Health and NHC are affiliated entities. National Health is an administrative services affiliate and contractor with respect to NHC. NHC is wholly owned by National Health Corporation Employee Stock Ownership Plan. All NHC personnel are employed by National Health, which is also responsible for all of NHC's "overall services in the area of personnel, loss control, insurance, education and training." National Healthcare Corporation Form 10-K at 7, 61 (dated Feb. 17, 2012), *available at* https://nhccare.com/pdfarchive'2012/05/20120220_form10k.pdf [R. 6, p. 7]. National Health also provides one hundred percent of its services to NHC. *Id.*

National Health claims that its access to a copy of the original complaint (albeit a fairly redacted one) is not enough to make it aware that this particular retaliation claim had been filed. To say that an organization so closely intertwined with another would not be aware of ongoing litigation arising from a FCA claim is, at best, a stretch.

National Health also asserts it would be unduly prejudiced if it was made to litigate this claim, and it neither knew nor should have known that but for Byrd's mistake, the original action would have been brought against it. This argument is without merit for many of the same reasons that its argument of no constructive notice fails. In short, Byrd's amendment merely corrects the name of a party that already had notice of the action – she is not bringing in a new party that had no prior notice.

7

Moreover, National Health's arguments that the burden lies entirely on Byrd are incorrect. The question under Rule 15(c)(1)(C) is not whether the plaintiff knew or should have known the identity of the defendant, but whether the defendant knew or should have known that it would have been named as a defendant but for an error. *Krupski v. Costa Crocier S. p. A.*, 560 U.S. 538, 548 (2010).

Byrd has clearly shown how closely related NHC and National Health are. The names of the two companies alone are so close that it is entirely reasonable to believe there was a mistake on Byrd's part in the initial filing. *See* 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1498 (3rd ed. 1990) (Rule 15(c) has been "amplified to state more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall relate back to the date of the original pleading"); *Powell v. Bolton Square Hotel Co., Inc.,* 2010 WL 1855756 at *3 (N.D.Ohio May 10, 2010) ("The misidentification of similarly named or related companies is the classic case for application of Rule 15(c) relation back"). These facts are sufficient to surmise that National Health should have known it would be implicated in this action.

National Health's claim of prejudice due to the length of time between suits is also immaterial, as the requirement of filing *qui tam* actions under seal is the sole reason for the delay. Byrd filed her Amended Complaint fourteen days after the case was unsealed. Her claim arises out of the same actions as the original complaint (they were even part of the original complaint), and they relate back and will be considered timely filed.

## 2. FMLA Retaliation

Byrd's FMLA retaliation claim is governed by a two-year statute of limitations. 29 U.S.C. § 2617(c)(1). Unlike her FCA retaliation claim, Byrd did not assert any claim under the FMLA in her original Complaint. Her employment with NHC ended on September 7, 2012, so she would have had to bring her FMLA claim no later than September 7, 2014. Therefore, her FMLA retaliation claim asserted for the first time in her April 5, 2018 Amended Complaint is time-barred.

For relation back for new claims to be available under Rule 15(c)(1)(C), the plaintiff must show that the newly asserted claim arose out of the conduct, transaction or occurrence set out, or attempted to be set out, in the original pleading. Courts do not apply this standard rigidly, but instead, it is applied by "asking whether the party asserting the statute of limitations defense had been placed on notice that it could be called to answer for the allegations in the amended pleading." *Hall v. Spencer Cty,* 583 F.3d 930, 934 (6th Cir. 2009); *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 573 (7th Cir. 2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that it shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one").

Byrd concedes that her original complaint did not contain a claim under the FMLA. Her 150-page original complaint included nine claims alleging substantive violations of the FCA and only one employment-related count alleging that she was "constructively discharged in retaliation for her oppositional activities," including "blowing the whistle on defendant's illegal activities." The original Complaint references Byrd's need to take

FMLA leave due to the stress of the employment environment, but it does not assert that Byrd was forced to resign as a result of having exercised FMLA rights, nor did it plead any factual allegations that would support such a claim.  National Health's motion to dismiss the FMLA retaliation claim will be granted.

**B.      Forsythe Sufficiently States a Claim for Relief**

In order to survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Twombly,* 550 US at 570.  The pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the defendant unlawfully harmed me accusation." *Iqbal,* 556 U.S. at 678.  A formulaic recitation of the elements of a cause of action will not do.  The allegations must be of a sufficient nature as to nudge the claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 US at 678.  The court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).  It is important to note, however, that a court does not need to accept every word in the complaint as true.  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 US at 678.  This evaluation is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 US at 679.  Each element of the claim must be sufficiently pleaded to survive a motion to

dismiss. *Ctr for Bio-Ethical Reform, Inc. v. Napolitano,* 614 F.3d 365, 372-74 (6th Cir. 2011).

For a retaliation claim, the plaintiff must show (1) she engaged in a protected activity, (2) her employer knew that she engaged in the protected activity, and (3) her employer discharged or otherwise discriminated against the employee as a result of the protected activity. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003).

### 1. Adverse Employment Action

National Health argues that Byrd fails to plead that she suffered any adverse employment action: she does not allege that she was fired or demoted, but instead alleges that she was "constructively discharged." Byrd responds that she may prove retaliation through constructive discharge and that a reasonable person could find her employment was so intolerable that she had no choice but to quit.

Constructive discharge occurs when working conditions are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Smith v. LHC Group, Inc.,* 727 Fed. Appx. 100, 104 (6th Cir. 2007). To demonstrate constructive discharge, the plaintiff must allege (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit. *Lester v. City of Kalamazoo,* 746 F.3d 714, 727-28 (6th Cir. 2014).

After Byrd returned from FMLA leave on January 15, she was called into a meeting and given two options – either go on administrative leave or take a severance package and separate from employment. The denial of Byrd's request for admission to an NHC facility

for her mother and sister could also be considered a form of retaliation. Also, the "final warning" Byrd received due to "outdated narcotics and failure to maintain adequate staffing levels," occurred after Byrd had worked for more than 14 years for NHC, never before receiving a warning or complaint on these issues. The use of a "final warning" could be construed by a reasonable person as retaliation for her protected activity. Moreover, a "final warning" implies that termination is imminent. In *Smith v. LHC Group,* the employee was the director of nursing, just like Byrd, and she was forced to resign to avoid being implicated in what she perceived to be an illegal and unethical scheme and because she could not in good conscience remain an employee. *Id.* at 103. The Sixth Circuit stated a jury could find these working conditions intolerable because "a jury may conclude that it is damaging to a professional to require her to engage in activity she considers illegal and immoral with the threat of prosecution and loss of her nursing license looming in the background." *Id.* at 104. Here, Byrd alleges that she had to resign because she "would have been at risk of being implicated in the fraudulent conduct, thereby also placing her nursing license in jeopardy." Viewing these allegations in the light most favorable to Byrd, the court finds that she has alleged facts to show that she suffered an adverse employment action.

    2.    **Protected Activity**

For Byrd's actions to be considered protected, she must show that they were undertaken "to stop one or more violations of the FCA." *Verble v. Morgan Stanley Smith Barney, LLC,* 148 F.Supp.3d 644, 657 (E.D.Tenn. 2015); *see also* 31 U.S.C. § 3730(h). An employee does not need to establish that her employer actually violated the FCA.

*Jones-McNamara v. Holzer Health Sys.,* 630 Fed. Appx. 394, 400 (6th Cir. 2015). However, a plaintiff needs to establish "some nexus to the FCA." *McKenzie v. BellSouth Telecomm, Inc.,* 219 F.3d 508, 517 (6th Cir. 2000). Making a report that alleges "fraud on the government" very well may constitute protected activity. *Id.* at 516; *see also Miller v. Abbott Labs,* 648 Fed. Appx. 555, 560 (6th Cir. 2016) (Section 3730(h) protects efforts to stop fraud on the government).

National Health incorrectly concludes that Byrd has not sufficiently pleaded this. Byrd clearly states that in 2011, she objected to NHC's practices, including requiring patients to bring in medication from home, upcoding, billing for services not rendered, keeping patients on service when they no longer qualified for skilled nursing care, and falsification of reports. After her reports, Byrd states that the Administrator, Karla Lane, placed increased pressure on her in an attempt to force her to quit. On January 24, 2012, Bryd submitted a written grievance to HR. She described the hostile work environment, and the alleged illegal activity occurring at the facility. She also explained what led to her administrative leave of absence on January 23 and stated that she felt pressure was being placed on her in an attempt to force her to quit.

On February 14, 2012, Byrd was interviewed by officers with Corporate Compliance for three hours. She reported illegal activities by Dr. Lowry billing for patients he didn't see and inflating and upcoding to maximize per diems paid by Medicare. Byrd states that despite providing this information, NHC did not take corrective action and reported that an internal audit revealed only a 5% error rate. Corporate Compliance later confirmed that error rate was, in fact, false, and the real error rate was around 20%. Under

13

the FCA, it is illegal to "knowingly make . . . a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a). The specific actions that Byrd alleges are indicative of a specific violation under the FCA.

### 3. Causal Connection

Byrd must also allege that her resignation was causally related to her protected activity, "at least in part." *McKenzie,* 219 F.3d at 518. National Health tries to portray this as a heavier burden than it actually is. Byrd need not explicitly draw any connection between these allegations and her later resignation, nor must she actually show that the retaliation was motivated by her complaints. Instead, Byrd merely needs to allege facts that are sufficient to allow the court to "draw on its judicial experience and common sense" and "draw a reasonable inference" that there is a causal connection. *Iqbal,* 556 U.S. at 678-79. Proving elements is a matter for trial. The court finds Byrd has alleged facts sufficient to create the inference of a causal connection.

Byrd's claim of constructive discharge is supported by her allegations of a hostile work environment which started when she engaged in protected activity and continued until she resigned. These allegations include threats of termination, increased scrutiny on job performance, and "bogus" complaints and warnings. It is plausible to believe that Byrd was forced to resign after experiencing retaliation for reporting the alleged illegal activities, and the court finds she has sufficiently pleaded enough facts from which such inferences can be drawn.

C.   **Motion to Amend**

Byrd moves for leave to amend her Amended Complaint because she discovered that two exhibits referenced in her Amended Complaint were not attached to the Amended Complaint. For the good cause shown, Byrd's motion [R. 16] is granted and she shall file a Second Amended Complaint with the appropriate exhibits.

## IV. Conclusion

In light of the foregoing discussion, the court finds that Byrd's FCA retaliation and state retaliation claims relate back to her original Complaint. National Health had notice of the original action and knew or should have known that it could be a named party. Additionally, Byrd has adequately alleged facts that create a plausible inference of wrongdoing. Therefore, National Health's motion to dismiss [R. 9] is **GRANTED in part and DENIED in part.** The motion is **GRANTED** as to Byrd's claim for retaliation under the Family Medical Leave Act; it is **DENIED** as to Byrd's retaliation claims under the False Claims Act and under Tennessee state law.

Byrd's motion for leave to file a Second Amended Complaint [R. 16] is **GRANTED.**

**ENTER:**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**